UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHELSEA DZIERBICKI,

       Plaintiff,

v.

       Case Number 07-14628-BC
       Honorable Thomas L. Ludington

TOWNSHIP OF OSCODA, ROBERT LAVACK,
KEVIN KUBIK, KEN KREINER, CURTIS
HALL,

       Defendants.
_____ /

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, GRANTING EX PARTE MOTION FOR LEAVE TO FILE EXHIBITS IN THE TRADITIONAL MANNER, AND DISMISSING COMPLAINT WITH PREJUDICE**

    Plaintiff Chelsea Dzierbicki's complaint, filed October 29, 2007, states the following eight counts against Defendants Oscoda Township and Officers Robert LaVack, Ken Kreiner, Kevin Kubik, and Curtis Hall: (1) assault, (2) gross negligence, (3) sexual harassment under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 et seq., (4) violations of the Fourth Amendment based on a warrantless search, (5) violations of equal protection under the Fourteenth Amendment, (6) conspiracy to violate the Fourth and Fourteenth Amendments under 42 U.S.C. § 1985, (7) violations of substantive due process under the Fourteenth Amendment, and (8) violations of the Fourth and Fourteenth Amendments by Oscoda Township.

    Now before the Court is Defendants' motion for summary judgment [Dkt. # 14], filed on August 29, 2008. Plaintiff filed a response [Dkt. # 18] on September 19, 2008, but Defendants did not file a reply. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will

not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the Court finds that Plaintiff has not raised a genuine issue of material fact with respect to any of her federal claims. Accordingly, the Court will dismiss those claims and decline to exercise jurisdiction over Plaintiff's remaining state law claims.

I

Plaintiff is currently a twenty-year old student at Ferris State University and resides in Big Rapids, Michigan. Plaintiff is the daughter of Officer Jeffrey Dzierbicki, who was a police officer for Oscoda Township at the time of the events alleged in the complaint.[1]

Defendant LaVack is the Chief of Police of Oscoda Township and has been employed by the department since 1974. Defendants Kreiner and Kubik have been employed as police officers by Oscoda Township since 2004 and 2005, respectively. Defendant Hall is a sergeant on the police force. At least at the time of the events alleged in this lawsuit, Defendants Kreiner, Kubik, and Hall were assigned to work the midnight shift.

According to Plaintiff, she was unlawfully targeted by Defendants for traffic stops. The police department conducted a survey of its officers in February or March 2006, documenting the number of times that Plaintiff has been stopped by its officers since Plaintiff began driving at the age of sixteen. The survey revealed that six different officers had stopped Plaintiff on ten separate occasions, and that four of those stops occurred during the midnight shift. According to the survey,

---

[1] Officer Dzierbicki has also filed a complaint against Oscoda Township and several individually named defendants. *See Jeffrey Dzierbicki v. Township of Oscoda*, No. 07-13109 (E.D. Mich. filed July 24, 2007). The Court previously consolidated Plaintiff's and Officer Dzierbicki's cases, but only through the close of discovery, in light of the differences between the parties, claims, and defenses in each of the two cases. *See* [Dkt. # 10].

Plaintiff was stopped three times by Sergeant Mark David, once by Officer Rousseau, once by Officer Mike Hearn, once by Officer Michael Gombos, three times by Defendant Kreiner, and once by Defendant Kubik. Plaintiff was issued a total of fifteen warnings, issued one citation for speeding by Defendant Kreiner, and arrested once for driving under the influence of alcohol by Defendant Kubik. Defendants Kubik, Kreiner, and others in the police department admittedly nicknamed the vehicle that Plaintiff drives, a white, Chevrolet Impala, "the white ghost."

In September 2005, Defendant Kreiner stopped Plaintiff in her vehicle, allegedly because she was driving five miles over the posted speed limit. According to Plaintiff, Defendant Kreiner commented to her that the next time that he caught her speeding "her ass would be his," and "I don't care who your daddy is you better have proof of insurance and registration." Defendant Kreiner did not issue Plaintiff a ticket on this occasion.

On October 30, 2005, Defendant Kubik stopped Plaintiff while she was driving back from a Halloween party with a friend in her vehicle. According to Plaintiff, Defendant Kubik did not have any reason to pull her over, and simply pulled her over because he knew that it was her. According to Defendant Kubik, he pulled her over because she failed to yield at a flashing red stop signal, crossed the center line, and was traveling at forty-eight miles per hour in a thirty-five miles per hour zone.[2] Additionally, he asserts that on previous occasions, he had observed Plaintiff on radar exceeding the speed limit, but did not pull her over. Eventually, he claims that he decided that she was no longer entitled to a "free pass."

During the Halloween stop, Defendant Kubik noted that Plaintiff had bloodshot eyes and

---

[2] The videotape of the traffic stop, attached as exhibit five to Defendants' motion for summary judgment, reveals that Chelsea admitted, "I thought I was only going five over," in response to Defendant Kubik telling her that she was going forty-eight miles per hour in a thirty-five miles per hour zone.

slightly slurred speech.  He scanned the inside of the car with a flashlight and saw an unopened twelve-pack of beer on the floor behind the driver's seat.  According to Plaintiff, Defendant Kubik opened Plaintiff's passenger door without her consent and confiscated an unopened twelve-pack of beer from the backseat of Plaintiff's car.  Plaintiff claims that Defendant Kubik could not have seen the beer through the window due to the window's dark tint.  Plaintiff also claims that Defendant Kubik asked her if she had anything to drink, and she replied that she had consumed a beer earlier that evening; Defendant Kubik claims that Plaintiff initially denied having anything to drink.

According to Defendant Kubik, he asked the male front-seat passenger to exit the vehicle, and called Defendant Kreiner to the scene to help when it appeared that the passenger was drunk. When the passenger exited the car, Defendant Kubik saw an opened beer can on the floor in front of him.  The passenger registered a .24 on a preliminary breathalyzer test ("PBT").  Defendant Kubik also called Defendant Hall to observe the stop, allegedly because it involved the daughter of another officer.  Plaintiff alleges that Defendant Kubik called Defendants Kreiner and Hall to the scene so that they could enjoy seeing her in a "sexy devil's costume," and that the officers continuously eyed her up and down in a sexual manner throughout the stop, which, including the search of the vehicle after her arrest, lasted approximately one hour.

According to Plaintiff, she passed the sobriety tests given to her by Defendant Kubik, but according to him, Plaintiff did not recite the alphabet accurately.  Defendant Kubik administered a PBT outside of the view of the squad car's camera, even though department policy requires the test to be within view of the camera.  Plaintiff registered a .158 on the PBT.  Since Plaintiff was under the age of eighteen, she was in violation of Michigan's "zero-tolerance" law, Mich. Comp. Laws § 257.625(6)(b).  Ultimately, Defendant Kubik arrested Plaintiff for operating while under the

influence of alcohol and transported her to the Iosco County Jail. According to Defendant Kubik, a subsequent vehicle search revealed a pipe containing marijuana in the center console. Plaintiff alleges that she was unaware of the presence of the beer and the marijuana.

When Defendant Kubik arrived with Plaintiff at the jail, he made several inappropriate sexual comments to Corrections Officer Patrick Robson about Plaintiff, which Plaintiff did not hear at the time. Officer Robson testified that Defendant Kubik stated to him, something like, "wouldn't you like to hit that?" and that when Plaintiff was not looking, Defendant Kubik indicated with his eyes that he thought that Plaintiff was hot. Officer Robson testified that Defendant Kubik had made inappropriate sexual comments concerning female arrestees on about five occasions. Officer Robson indicated to Defendant Kubik that he thought that the comments were inappropriate, and reported Defendant Kubik's comments to Corporal Jeff Schlagel and dispatcher Sue Hamlin. According to Officer Dzierbicki, Officer Robson also reported Defendant Kubik's comments to him.

Officer Dzierbicki expressed some concerns about Plaintiff's arrest to Defendant LaVack. Defendant LaVack testified that he was not informed by either Officer Dzierbicki or Officer Robson about Defendant Kubik's sexual comments at the jail, however, Defendant LaVack admitted that he had concerns regarding the traffic stop after he reviewed the tape of the stop. Defendant LaVack expressed to Officer Dzierbicki concerns regarding the fact that Plaintiff had been handcuffed behind the back when she had not posed a threat to the officers, as well as the fact that Plaintiff was taken out of the camera's view. According to Officer Dzierbicki, no one from the department spoke to Defendant Kubik or Officer Robson about the incident.

Officer Hearn testified that at some point he had told Officer Dzierbicki to tell Plaintiff to be careful, based on a conversation that he had overheard between Defendants Kubik and Officer

Alan MacGregor. According to Officer Dzierbicki, Officer Hearn told him that Defendant Kubik had a practice of "laying in wait" for Plaintiff to drive by him. One officer testified that he heard Defendant Kubik talking about laying in wait for Plaintiff to pass by, and another officer testified that he had generally heard it "bantered about" that such conduct occurred.

In response to Officer Hearn's statements, on February 18, 2006, Officer Dzierbicki drove Plaintiff's car into town. Before driving into town, Officer Dzierbicki contacted central dispatch in an attempt to ascertain the location of the police officers on duty, and specifically inquired about Defendant Kubik. According to Defendant Kubik, he saw the vehicle that Plaintiff typically drove traveling south on US-23, and he subsequently drove north to run stationary radar. Later, the same vehicle drove by his location, but was not speeding. Defendant Kubik remained at that spot to work on his daily reports. According to Defendants, Officer Dzierbicki drove over the same mile and a half stretch of US-23 for about two hours and twenty minutes.

Eventually, according to Defendant Kubik, he received a "be on the lookout" notice for a white vehicle traveling at a high rate of speed. Based on his experience, he thought that the vehicle could be the vehicle typically driven by Plaintiff. Later, on road patrol, he saw that vehicle and followed it. When he saw it cross the center line, he pulled the driver over. According to Officer Dzierbicki, he did not violate any traffic laws, and Defendant Kubik's assertion that he crossed the center line was fabricated.

According to Officer Dzierbicki, Defendant Kubik was surprised to find that Plaintiff was not the driver of the car. According to Defendants, Officer Dzierbicki immediately became verbally combative and profane with Defendant Kubik. At Officer Dzierbicki's request, Defendant Hall, as Defendant Kubik's supervisor, was called to the scene; Officer Dzierbicki told Defendant Hall that

Defendant Kubik had been targeting Plaintiff.

Officer Dzierbicki emphasizes that there is no physical evidence that he crossed the center line, as there were no tire tracks on the road. Additionally, there is no videotape of the stop because Defendant Kubik's squad car was out of videotape that night, even though it is departmental policy to begin recording when an officer activates emergency lights. On March 11, 2006, Officer Dzierbicki submitted a written statement to Defendants Hall and LaVack, which expressed his concerns regarding the targeting of Plaintiff and further alleged that citizens had complained to him that the midnight shift was too aggressive when it consisted of Defendants Kubik and Kreiner. Officer Dzierbicki also expressed his concerns to Defendant LaVack personally, and Defendant LaVack admittedly responded, "no worries because no one is going to lose their jobs over this." Apparently, although it was found that Defendant Kubik violated policy and procedure for use and operation of the in-car camera, he did not receive any discipline.

On February 19, 2006, Officer Gombos wrote Defendant LaVack a letter expressing his concerns regarding the "high level of tension among the patrolmen involving the frequency of stops made on Chelsea Dzierbicki and what to do about it." Officer Gombos also expressed, in an affidavit, his belief that Plaintiff was not subject to selective enforcement by any officers, but that her reckless driving was an issue that her father need to address with her. According to Defendants, Sergeant David approached Officer Dzierbicki expressing similar concerns, and he indicated that he would take care of it. According to Defendants, Officer Hearn and Defendant Hall also expressed concerns regarding Plaintiff's driving, and the prevailing opinion at the police station was that Plaintiff was always speeding.

Meanwhile, on March 10, 2006, Plaintiff was traveling home in her car on a dark, curvy,

rural road when a vehicle approached her from behind. According to Plaintiff, the vehicle was tailgating her with its high beams on for nine to ten miles, nearly blinding her. Plaintiff was afraid, and increased the vehicle's speed in an attempt to get away. According to Defendant Kreiner, he was doing road patrol and following a pickup truck going fifty-five miles per hour when he noticed another vehicle in front of the truck going faster. Believing that the vehicle was speeding, Defendant Kreiner stopped to run stationary radar, which showed that the car was going sixty-five or sixty-six miles per hour in a fifty-five miles per hour zone. While Defendant Kreiner was pacing the vehicle, he witnessed the vehicle accelerate to eighty miles per hour and cross the center line twice.

Defendant Kreiner testified that until he turned on his lights, he did not know if Plaintiff knew that it was a police officer that was following her. When he turned on his lights, Plaintiff immediately pulled over. Plaintiff claims that when she told him that he made her fear for her life, he replied "if you are scared then you should not be driving at night." The conversation was not captured by the car's recording system. Plaintiff admitted in her deposition that she had been driving over the posted speed limit. Defendant Kreiner issued Plaintiff a ticket for driving five over the speed limit and a warning for driving left of center; the prosecutor allowed Plaintiff to plead to a lesser offense. Defendants allege that the department's videotape of the stop shows Defendant Kreiner following at a safe distance before activating his lights and closing in on the vehicle.

II

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical

doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

III

Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Maine v. Thiboutot*, 448 U.S. 1 (1980). In this case, Plaintiff alleges the following violations of her federal constitutional rights: (1) violations of her Fourth Amendment rights based on a warrantless search, (2) violation of her equal protection rights under the Fourteenth Amendment, (3) conspiracy to violate her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1985, (4) violation of her substantive due process rights under the Fourteenth Amendment, and (5) violations of her Fourth and Fourteenth Amendment rights by Oscoda Township.

Generally, to survive summary judgment in a § 1983 action, the plaintiff must demonstrate a genuine issue of material fact as to two elements: (1) the challenged conduct was committed by a person acting under the color of state law, and (2) the conduct caused a deprivation of the plaintiff's rights or privileges protected by the laws or Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). The Court will address each of Plaintiff's federal claims below.

A

Plaintiff claims that Defendant Kubik violated her Fourth Amendment rights when he seized the twelve-pack of beer and the marijuana from her car without a warrant and without probable cause. Defendant Kubik argues that the pre-arrest seizure of the beer was valid because it was in plain view in the back of the car, *see Horton v. California*, 496 U.S. 128 (1990), and that the marijuana was seized in the course of a search incident to a valid arrest. *See United States v. Robinson*, 414 U.S. 218 (1973); *People v. Chapman*, 387 N.W.2d 835 (Mich. 1986).

"[T]he plain view exception permits the warrantless seizure of an object provided that (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and, (3) the officer has a lawful right of access to the object itself." *United States v. Bishop*, 383 F.3d 623, 626 (6th Cir. 2003) (citing *Horton*, 496 U.S. at 136-37, and *Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality)). It is generally settled that "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Brown*, 460 U.S. at 742 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). And finally, a police officer's use of a flashlight to illuminate the interior of a vehicle does not violate any constitutional rights. *Id.* at 739-740 (finding that "[t]here is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers") (internal citations omitted); *United States v. Gooch*, 499 F.3d 596, 600 (6th Cir. 2007).

The plain view exception to the warrant requirement applies to Defendant Kubik's seizure of the beer and there is no genuine issue of material fact which could suggest otherwise. Plaintiff contends that the exception does not apply because Defendant Kubik could not have seen the beer when it was behind the driver's seat, the back windows of the car were darkly tinted, and it was nighttime. However, the videotape of the traffic stop, attached as exhibit five to Defendants' motion for summary judgment, demonstrates that there are no genuine issues of material fact concerning the following: Defendant Kubik pulled Plaintiff over in her vehicle. After some initial questioning and learning that Plaintiff was seventeen years old, Defendant Kubik asked Plaintiff if there was "any alcohol, drugs, anything like that in the vehicle." Immediately after Plaintiff indicated that there was not, Defendant Kubik shined his flashlight through the tinted window into the backseat and inquired as to how Plaintiff could lie to him when he could see a twelve-pack of beer. Only after identifying the beer and verbally confirming its presence to Plaintiff, did Defendant Kubik open the door and retrieve the twelve-pack of Heineken from behind the driver's seat. Plaintiff cannot raise a genuine issue of material fact simply by alleging a contrary, and blatantly inaccurate, version of events.

Plaintiff has not raised any genuine issues of material fact with respect to whether the plain view doctrine applies to Defendant Kubik's seizure of the beer from her vehicle. Nor has she disputed that the marijuana was seized incident to a lawful arrest. Accordingly, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's Fourth Amendment claims.

B

Plaintiff claims that Defendants violated her right to equal protection under the Fourteenth Amendment by discriminating against her based on her gender. Plaintiff alleges that Defendants

Kreiner and Kubik have "repeatedly targeted her by laying and waiting for the right opportunity to pull her over for no other reason than to embarrass and humiliate her." Plaintiff also appears to claim that officers on the midnight shift have targeted other young and attractive females in addition to herself, but does not point to any specific individuals. Finally, Plaintiff alleges that Defendant LaVack knew that other officers were targeting her and harassing her, and that he did nothing to prevent it from recurring either through discipline or training.

Traditionally, to establish an equal protection claim, a plaintiff "must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class." *Jones v. Union County*, 296 F.3d 417, 426 (6th Cir. 2002) (citing *Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir. 1991)). Plaintiff has not advanced any evidence to support her proposition that she was discriminated against based on her membership in a suspect class. Her own arguments undercut this proposition, as she argues that Defendants specifically targeted her as an individual. Although Plaintiff generally alleged that other females were targeted, she has not advanced any evidence to support this proposition.

Although Plaintiff does not directly advance the argument, she could also potentially establish a "class of one" equal protection claim. To prove such a claim, she must show that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2005) (citations omitted). The Fourteenth Amendment equal protection clause aims to protect against "intentional and arbitrary discrimination," particularly by government agents acting improperly. *See id.* (internal citation omitted). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support

the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (internal citations omitted); *see also Ross v. Duggan*, 402 F.3d 575, 587 (6th Cir. 2004) (noting that a plaintiff bears the burden of showing that government action "did not rationally further any conceivable public purpose").

Here, Plaintiff has not identified any other persons similarly situated that were differently treated. Nor has Plaintiff provided any evidence that no rational basis supports Defendants' actions, as Plaintiff has acknowledged speeding and driving under the influence of alcohol. Moreover, while Plaintiff alleges that she was singled out for traffic stops, Plaintiff does not advance any evidence to show that the alleged targeting was based on animus rather than her driving habits and a concern for safety. Because a rational basis case places the burden of proof on the plaintiff, rather than a strict scrutiny inquiry which places the burden of proof on the government, Plaintiff has not carried her burden as to her claim of a violation of equal protection. Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's equal protection claims.

C

Plaintiff alleges that Defendants Kubik and Kreiner acted in concert to violate her civil rights. *See* 42 U.S.C. § 1985. The standard for proving a civil conspiracy in the Sixth Circuit is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir.1985)).

Plaintiff argues that a conspiracy to violate her civil rights existed because both Defendants Kubik and Kreiner were known to lay in wait in their squad cars for her in order to stop and ticket her. Plaintiff also alleges that Defendant Kreiner's conduct in tailgating her, and Defendant Kubik's conduct in calling Defendants Kreiner and Hall to the scene of the October 30, 2005, traffic stop was conduct that was part of the conspiracy. Defendants argue that Plaintiff cannot establish that there was an agreement between any of the Defendants. Indeed, Plaintiff has not advanced evidence that the officers had a "single plan." *See Collyer*, 98 F.3d at 229. Plaintiff advances no evidence to show that the conduct of each of the officers was not isolated, but was linked to each of the other officer's conduct through an agreement.[3] Accordingly, the Court will grant Defendant's motion for summary judgment on Plaintiff's § 1985 claim.

D

Plaintiff argues that Defendants' conduct violated her substantive due process rights under the Fourteenth Amendment. Plaintiff and Defendants agree that Plaintiff must show that Defendants' conduct "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Mertik v. Blalok*, 983 F.2d 1353, 1367-68 (6th Cir. 1993). Plaintiff suggests that "conscience shocking" conduct involves "a high level of outrageousness." *See Ward v. Anderson*, 494 F.3d 929, 937 (10th Cir. 2007). Plaintiff argues that Defendants' conduct shocks the conscious

---

[3] The Court also notes that Plaintiff has not advanced evidence that any alleged conspiracy was motivated by a "class-based, invidiously discriminatory animus." *United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Collyer*, 98 F.3d at 233 (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)).

because they subjected Plaintiff to numerous unwarranted traffic stops, they laid in wait for her, Defendant Kreiner tailgated Plaintiff,[4] and Defendant LaVack turned a blind eye to the behavior. While these allegations, to the extent that they are supported by the record, may constitute objectionable conduct, they do not rise to a level that "shocks the conscience." Accordingly, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's substantive due process claim.

E

Plaintiff alleges that Oscoda Township is liable for violations of her constitutional rights pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), because it failed to establish appropriate customs, practices, and policies regarding the supervision, training, control, and discipline of its officers. As discussed above, Plaintiff has not show a genuine issue of material fact exists with respect to any of her federal constitutional claims. Accordingly, the Court will grant summary judgment on Plaintiff's claim against Oscoda Township.

IV

Plaintiff's complaint alleges three counts under Michigan law: (1) assault, (2) gross negligence, and (3) sexual harassment under the ELCRA. However, the Court declines to exercise jurisdiction over Plaintiff's state law claims because it is granting summary judgment as to all of Plaintiff's federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed.").

---

[4] The videotape of the traffic stop, attached as exhibit five to Defendants' motion for summary judgment, shows Defendant Kreiner following Plaintiff at a substantial distance. On the videotape, Defendant Kreiner verbally notes that Plaintiff is speeding and he notes when she visibly crosses the center line.

V

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 14] is **GRANTED**.

It is further **ORDERED** that Defendant's ex parte motion for leave to file exhibits in the traditional manner [Dkt. # 25] is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 17, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 17, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS

---